**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:26-cv-04236-SKC-CYC

CHRISTIAN MEDICAL & DENTAL ASSOCIATIONS and
BUTTON FAMILY PRACTICE P.C.,

*Plaintiffs,*

v.

AUBREY C. SULLIVAN, Director of the Colorado Civil Rights Division, in her official capacity;
SERGIO RAUDEL CORDOVA, GETA ASFAW, MAYUKO FIEWEGER, DANIEL S. WARD, JADE ROSE KELLY, and ERIC ARTIS, as members of the Colorado Civil Rights Commission, in their official capacities;
PHIL WEISER, Colorado Attorney General, in his official capacity; and GRETCHEN HAMMER, Executive Director of the Colorado Department of Health Care Policy and Financing, in her official capacity,

*Defendants.*

---

**STATEMENT OF INTEREST OF
THE UNITED STATES OF AMERICA**

---

Pursuant to 28 U.S.C. § 517, the United States respectfully submits this Statement of Interest. This case concerns whether Colorado may apply the Colorado Anti-Discrimination Act ("CADA") to compel religious medical professionals to provide, facilitate, or participate in medical interventions that violate their sincerely held religious beliefs and professional judgments; compel them to convey messages they do not wish to convey; restrict their ability to communicate their views

concerning those interventions; and deny them accommodations afforded to comparable secular interests. Plaintiffs seek preliminary relief against Colorado's interpretation and enforcement of CADA following the Colorado Supreme Court's opinion in *Boe v. Child.'s Hosp. Colorado*, 2026 CO 32. Plaintiffs allege that Colorado interprets CADA to require healthcare providers who prescribe hormones or perform procedures for certain medical purposes to provide those same interventions for gender-transition purposes or face enforcement consequences. Plaintiffs further allege that Colorado's interpretation compels speech, suppresses protected expression, burdens religious exercise, and treats religious objectors less favorably than similarly situated secular actors.

Plaintiffs are entitled to preliminary relief. They have demonstrated a strong likelihood of success on multiple constitutional claims. The Supreme Court has repeatedly held that the government may not compel citizens to express messages they reject, may not selectively burden religious exercise while accommodating comparable secular conduct, and may not deny equal treatment to religious observers. *See 303 Creative LLC v. Elenis*, 600 U.S. 570 (2023); *Fulton v. Philadelphia*, 593 U.S. 522 (2021); *Church of the Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520 (1993). Plaintiffs also face ongoing irreparable injury because the loss of First Amendment freedoms constitutes irreparable harm as a matter of law. *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Accordingly, this Court should grant Plaintiffs' motion for preliminary injunction.

## INTEREST OF THE UNITED STATES

The United States, through the Department of Justice, Civil Rights Division ("DOJ"), has a substantial interest in the proper enforcement of the Constitution's guarantees of religious liberty, freedom of speech, and equal protection. Congress has authorized the Attorney General to attend to the interests of the United States in any matter pending in federal court. 28 U.S.C. § 517.

The United States has a longstanding interest in ensuring that state governments do not burden religious exercise, compel speech, suppress protected expression, or discriminate against religious individuals and organizations in violation of the First and Fourteenth Amendments. The United States also has an interest in ensuring that federal courts remain available to adjudicate pre-enforcement constitutional challenges involving credible threats of enforcement. These interests are directly implicated here because Plaintiffs allege that Colorado's enforcement of CADA burdens core First Amendment freedoms and violates the Equal Protection Clause.

## BACKGROUND

Plaintiffs are Christian medical providers and healthcare organizations who assert religious objections to participating in gender-transition interventions. Plaintiffs allege that they regularly provide medical care to all patients, including patients who identify as transgender, but decline to provide hormones, surgeries, or

referrals intended to facilitate gender transitions because doing so would violate their religious beliefs and professional judgment.

CADA applies to places of public accommodation, including medical clinics and healthcare providers. In *Boe*, the Colorado Supreme Court recently interpreted CADA to require providers that offer hormones or other procedures for certain medical purposes to provide those same interventions when requested for gender-transition purposes. 2026 CO 32. Plaintiffs allege that Colorado's interpretation of CADA subjects them to enforcement proceedings, civil liability, publication restrictions, administrative investigations, and Medicaid-related penalties.

At the same time, Colorado law contains numerous exemptions from otherwise applicable anti-discrimination requirements. Plaintiffs identify exemptions based upon medical judgment, clinical considerations, disability accommodations, undue hardship determinations, bona fide relationships, bona fide occupational qualifications, conscience protections for abortion and sterilization procedures, and other individualized determinations.

## LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). A plaintiff seeking preliminary injunctive relief must establish four elements: "(1) a substantial likelihood of success on the merits; (2) irreparable injury to the movant if the injunction is denied; (3) the threatened injury to the movant outweighs the injury to

the opposing party under the injunction; and (4) the injunction would not be adverse to the public interest." *Free the Nipple-Fort Collins v. Fort Collins*, 916 F.3d 792, 797 (10th Cir. 2019); *see also Winter*, 555 U.S. at 20. In cases involving government action, the final two factors often merge because "the Government's interest is the public interest." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

Where a plaintiff alleges ongoing violations of the First Amendment, the likelihood-of-success inquiry is often dispositive. The Supreme Court has repeatedly recognized that the loss of First Amendment freedoms "for even minimal periods of time" constitutes irreparable injury. *Elrod*, 427 U.S. at 373. Accordingly, courts routinely conclude that a plaintiff who demonstrates a likelihood of success on a claim arising under the Free Speech Clause or Free Exercise Clause ordinarily satisfies the irreparable-harm requirement as well. *See Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19 (2020); *Awad v. Ziriax*, 670 F.3d 1111, 1131 (10th Cir. 2012).

Preliminary injunctive relief is especially appropriate where government defendants seek to enforce a law that allegedly burdens constitutional rights. The Supreme Court has repeatedly granted or affirmed preliminary relief where plaintiffs demonstrated a likelihood of success on claims involving compelled speech, restrictions on protected expression, or burdens on religious exercise. *See, e.g.*, *303 Creative*; *Fulton*; *Roman Cath. Diocese.*

## ARGUMENT

### I. Plaintiffs Are Likely to Succeed on the Merits.

#### A. Plaintiffs Are Likely to Succeed on Their Free Speech Claims.

The strongest basis for preliminary relief is Plaintiffs' Free Speech claim. Plaintiffs allege that Colorado's application of CADA compels them to communicate messages regarding gender identity that conflict with their religious beliefs and professional judgment and prohibits them from communicating truthful information regarding the medical services they provide. Compl. ¶¶ 155–60, 268–309, 368–413. The First Amendment protects both "the right to speak freely and the right to refrain from speaking at all." *Wooley v. Maynard*, 430 U.S. 705, 714 (1977). The Supreme Court has repeatedly held that the government may neither compel a private citizen to express, endorse, or facilitate expression of a message that the citizen rejects nor suppress the free communication of ideas. *E.g.*, *303 Creative*, 600 U.S. at 588–603; *Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston*, 515 U.S. 557, 573 (1995); *West Virginia State Board of Education v. Barnette*, 319 U.S. 624, 642 (1943); *Cantwell v. Connecticut*, 310 U.S. 296, 308 (1940).

##### i. Colorado May Not Compel Plaintiffs to Express Messages They Reject.

In *303 Creative*, the Supreme Court considered Colorado's attempt to apply CADA to require a website designer to create expressive content celebrating marriages that conflicted with her beliefs. The Court held that Colorado could not

"compel an individual to create speech she does not believe." 600 U.S. at 591. The Court emphasized that "[i]f there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox" in matters of opinion or force citizens to confess by word or act their faith therein. *Id.* at 589 (quoting *Barnette*, 319 U.S. at 642). Plaintiffs allege a comparable injury here.

According to the Complaint, CMDA members believe that sex is immutable, that biological sex should be respected in medical treatment, and that gender-transition interventions are not medically appropriate for their patients. Compl. ¶¶ 53–64, 142–60. Plaintiffs further allege that Colorado's application of CADA requires them to communicate messages inconsistent with those beliefs through pronoun usage, treatment recommendations, referrals, medical certifications, and other professional communications. Compl. ¶¶ 155–60, 372–74.

Colorado may argue that these requirements regulate conduct rather than speech. But *303 Creative* rejected a similarly broad conception of governmental authority. The Supreme Court explained that anti-discrimination laws, while often valid and important, cannot be applied in a manner that compels protected expression. 600 U.S. at 590–93. The First Amendment does not cease to apply merely because the government invokes a public-accommodations statute. *Id.*

Nor does the fact that the challenged speech occurs in a professional setting eliminate constitutional protection. In *National Institute of Family & Life Advocates v. Becerra* (hereinafter "*NIFLA*"), the Supreme Court rejected the notion that

"professional speech" constitutes a separate category of speech receiving lesser constitutional protection. 585 U.S. 755, 767–73 (2018). Physicians, like other citizens, possess First Amendment rights, and their "speech [does not] become conduct just because it can also be described as a 'treatment,' a 'therapeutic modality,' or anything else." *Chiles v. Salazar*, 607 U.S. 627, 645 (2026).

The communications at issue concern contested questions involving medicine, ethics, and human identity. The Complaint alleges that Plaintiffs object to conveying messages regarding gender identity that they believe are medically inaccurate and religiously impermissible. Compl. ¶¶ 53–64, 155–60. Under *Barnette*, *Wooley*, *NIFLA*, *303 Creative*, and *Chiles*, Colorado may not compel such expression.

**ii. Colorado May Not Suppress Plaintiffs' Protected Speech.**

Plaintiffs also challenge CADA's application to statements explaining the services they provide and the reasons for their medical practices. Compl. ¶¶ 264–309, 375–410. According to the Complaint, Plaintiffs would like to explain publicly that they do not provide gender-transition interventions and to communicate the religious and medical beliefs underlying that policy but refrain from doing so because of Colorado's enforcement position. Compl. ¶¶ 279–309.

These allegations closely resemble those presented in *303 Creative*. There, the plaintiff wished to publish a statement on her website explaining the religious reasons for her business practices. The Supreme Court treated Colorado's application of CADA to those statements as presenting a core First Amendment controversy. 600

U.S. at 589–93. Likewise here, Plaintiffs seek to communicate truthful information concerning the services they provide and do not provide.

The Supreme Court has long held that speech concerning lawful professional services receives full constitutional protection. *See NIFLA*, 585 U.S. at 767–73; *Chiles*, 607 U.S. at 646–47. The Tenth Circuit likewise recognizes that the First Amendment protects speech from governmental efforts to suppress disfavored viewpoints. *See Awad*, 670 F.3d at 1128–29. A regulation that permits one side of a debate to speak while silencing the other side raises serious constitutional concerns.

Plaintiffs plausibly allege exactly that sort of burden. They contend that Colorado permits speech supporting gender-transition interventions but threatens enforcement when healthcare providers communicate opposing views or explain that they will not provide such interventions. Compl. ¶¶ 281–309, 396–410. At a minimum, those allegations establish a substantial likelihood of success sufficient to support preliminary relief.

**B. Plaintiffs Are Likely to Succeed on Their Free Exercise Claims.**

Plaintiffs allege that Colorado's regulatory framework contains numerous exemptions, accommodations, and discretionary exceptions based on secular considerations. Compl. ¶¶ 419–66. Those allegations include exceptions based upon medical judgment, professional discretion, practical considerations, conscience protections, and individualized decision-making by providers and regulators. Compl. ¶¶ 419–66. The Complaint further alleges that Colorado permits healthcare

professionals to decline specific interventions for secular reasons yet refuses to extend comparable accommodation when the objection is religious. Compl. ¶¶ 432–58. Plaintiffs further allege that Colorado accommodates numerous secular objections while denying analogous accommodations for religious objections that would similarly affect the State's asserted interests.

The Supreme Court explained in *Fulton* that where government reserves discretion to create exceptions for secular reasons, it cannot categorically deny similar accommodation to religious exercise. 593 U.S. at 537–42. The Constitution forbids treating religious conduct less favorably than comparable secular conduct. *See Tandon v. Newsom*, 593 U.S. 61, 62 (2021) (per curiam); *see also Colorado Christian Univ. v. Weaver*, 534 F.3d 1245, 1266–67 (10th Cir. 2008) (explaining government action disfavoring religion triggers serious constitutional concerns).

### C. Plaintiffs Are Likely to Succeed on Their Equal Protection Claims.

The Equal Protection Clause prohibits States from treating similarly situated persons differently without adequate justification. *Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). The Supreme Court has long recognized that governmental discrimination targeting religious organizations or religious conduct raises serious constitutional concerns. *Larson v. Valente*, 456 U.S. 228, 246 (1982). Plaintiffs allege that Colorado systematically accommodates secular interests while refusing comparable accommodations for religious conscience objections. Compl. ¶¶ 419–66, 549–55.

Specifically, Plaintiffs allege that Colorado recognizes numerous forms of professional judgment and individualized decision-making but refuses to recognize analogous religious objections to gender-transition interventions. Compl. ¶¶ 432–58. Those allegations implicate the same constitutional concerns discussed in *Larson*, *Lukumi*, and *Fulton*. While those decisions principally arose under the Religion Clauses, they reflect a broader constitutional principle: government may not treat religious observers as disfavored participants in public life.

The Equal Protection Clause additionally safeguards against unequal treatment in regulating speech and religious expression. *See R.A.V. v. St. Paul*, 505 U.S. 377, 384 n.4 (1992) (noting the Supreme "Court itself has occasionally fused the First Amendment into the Equal Protection Clause . . . with the acknowledgment . . . that the First Amendment underlies its analysis"); *Carey v. Brown*, 447 U.S. 455, 461–62 (1980) ("When government regulation discriminates among speech-related activities in a public forum, the Equal Protection Clause mandates that the legislation be finely tailored to serve substantial state interests, and the justifications offered for any distinctions it draws must be carefully scrutinized."); *Niemotko v. Maryland*, 340 U.S. 268, 284 (1951) ("To allow expression of religious views by some and deny the same privilege to others merely because they or their views are unpopular, even deeply so, is a denial of equal protection of the law forbidden by the Fourteenth Amendment.").

Plaintiffs allege that Colorado's policies burden both religious exercise and speech while simultaneously denying religious objectors accommodations available to others. Compl. ¶¶ 419–66, 549–55. At the preliminary-injunction stage, Plaintiffs need not conclusively prove their Equal Protection claim. They need only demonstrate a substantial likelihood of success. Given the allegations of secular exceptions, individualized exemptions, and unequal treatment of religious objections, Plaintiffs have met that burden.

## II. Plaintiffs Will Suffer Irreparable Harm Absent Preliminary Relief.

The Supreme Court has repeatedly recognized that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod*, 427 U.S. at 373. The Tenth Circuit applies that principle in both free-speech and free-exercise contexts. *See Awad*, 670 F.3d at 1131; *Verlo v. Martinez*, 820 F.3d 1113, 1127 (10th Cir. 2016).

That rule has particular force here because Plaintiffs have demonstrated a substantial likelihood of success on claims alleging compelled speech, suppression of protected expression, and burdens on religious exercise. Every day Colorado allegedly enforces CADA in a manner that requires Plaintiffs to alter their communications, refrain from expressing their views, or choose between their religious convictions and their professional livelihoods constitutes a fresh constitutional injury. Compl. ¶¶ 279–309, 368–413, 471–507.

The Complaint alleges that CMDA members and Button Family Practice presently refrain from engaging in constitutionally protected conduct because of Colorado's enforcement position. Plaintiffs allege that they wish to communicate openly regarding their medical and religious views concerning sex and gender identity; to publish policies concerning the services they do and do not provide; and to continue practicing medicine in accordance with their religious convictions and professional judgment. Compl. ¶¶ 279–309, 372–410. Plaintiffs further allege that they have curtailed or altered those activities because of a credible threat of enforcement under CADA. *Id.*

Those injuries are irreparable. "The timeliness of the relief sought is not measured in money damages," because constitutional rights, once infringed, cannot be fully restored through retrospective remedies. *Awad*, 670 F.3d at 1131. If Plaintiffs are forced to speak contrary to conscience, refrain from protected expression, or conform their conduct to Colorado's viewpoint while this litigation proceeds, no subsequent judgment can fully remedy that loss.

The same is true of Plaintiffs' Free Exercise claims. The Supreme Court has repeatedly granted emergency and preliminary relief where government action allegedly forces religious adherents to violate religious convictions or forgo protected religious conduct. *See Roman Cath. Diocese*, 592 U.S. at 19; *Tandon*, 593 U.S. at 63. As the Court explained in *Roman Cath. Diocese*, even temporary burdens on

constitutional rights constitute irreparable harm because constitutional freedoms are entitled to immediate protection. 592 U.S. at 19.

Plaintiffs allege precisely such harms. They contend that Colorado's interpretation of CADA pressures them to facilitate gender-transition interventions, make referrals they believe are morally impermissible, use pronouns and terminology inconsistent with their beliefs, and refrain from communicating contrary views. Compl. ¶¶ 142–60, 171–79, 368–410.

Nor can Colorado plausibly argue that the alleged injuries are speculative. Plaintiffs challenge an existing enforcement regime. They allege that Colorado's interpretation of CADA, particularly after *Boe*, currently governs their conduct and presently chills the exercise of constitutional rights. Compl. ¶¶ 264–309, 350–413.

## III. The Balance of Equities and Public Interest Favor an Injunction.

The final two preliminary-injunction factors likewise support relief. When the government is a party, the balance-of-equities and public-interest inquiries largely merge. *Nken*, 556 U.S. at 435. In that context, courts assess whether the public interest is better served by preserving constitutional freedoms or by permitting enforcement of the challenged governmental action pending final judgment. Here, both considerations favor Plaintiffs.

First, Colorado possesses no legitimate interest in enforcing laws in a manner that violates the Constitution. The Tenth Circuit has repeatedly recognized that "it is always in the public interest to prevent the violation of a party's constitutional

rights." *Awad*, 670 F.3d at 1132; *see also Verlo*, 820 F.3d at 1127. Thus, where a plaintiff demonstrates a likelihood of success on constitutional claims, the government cannot claim an equitable interest in continuing the challenged conduct.

Second, the burden imposed on Colorado by preliminary relief would be limited. Plaintiffs do not seek to invalidate CADA in its entirety. Nor do Plaintiffs seek to prohibit Colorado from enforcing generally applicable anti-discrimination protections in all contexts. Instead, Plaintiffs seek narrowly tailored relief protecting them from enforcement of CADA in circumstances that allegedly compel speech, burden religious exercise, and deny equal treatment under law. Compl. Prayer for Relief; PI Br. at 1–3, 39–40.

By contrast, the harms facing Plaintiffs are substantial. Absent relief, Plaintiffs allege that they must choose between adhering to their religious convictions and risking investigations, civil liability, professional sanctions, and exclusion from government healthcare programs. Compl. ¶¶ 368–410. They further allege that they must either refrain from expressing their views or risk enforcement under CADA's publication provisions. Compl. ¶¶ 279–309. The balance of equities overwhelmingly favors preventing those constitutional injuries.

The public interest likewise strongly supports an injunction. The Supreme Court has repeatedly explained that the Nation's constitutional tradition protects both freedom of speech and freedom of religion even when the speech or religious practice at issue is controversial. *See 303 Creative*, 600 U.S. at 592–94; *Barnette*, 319

U.S. at 641–42; *Lukumi*, 508 U.S. at 547. Indeed, *303 Creative* is especially instructive because it involved the same state statute challenged here. There, the Supreme Court reaffirmed that Colorado's interest in enforcing CADA, important though it may be, does not authorize the State to compel speech. 600 U.S. at 589–603. The public has a profound interest in ensuring that constitutional guarantees remain meaningful when government pursues otherwise legitimate regulatory objectives.

The public also has a substantial interest in preserving a healthcare system that accommodates diverse religious and moral viewpoints. Plaintiffs allege that they continue to serve all patients, including patients who identify as transgender, while objecting only to specific procedures and communications. Compl. ¶¶ 142–60, 171–79. The public interest is not served by forcing healthcare professionals to abandon religious convictions as a condition of practicing medicine.

Accordingly, because Plaintiffs face ongoing constitutional injuries, because Colorado lacks a legitimate interest in enforcing unconstitutional applications of CADA, and because preserving First Amendment freedoms is always in the public interest, both the balance of equities and the public interest strongly favor issuance of a preliminary injunction.

## CONCLUSION

In light of the considerations above, this Court should grant Plaintiffs' Motion for Preliminary Injunction.

DATED: November 20, 2026

Respectfully submitted,

CRAIG W. TRAINOR
Acting Assistant Attorney General

JEFFREY MORRISON
Deputy Assistant Attorney General

*/s/ Jordan K. Carpenter*
JORDAN K. CARPENTER (TN 035074)
Counsel
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530
Telephone: (202) 514-3847
Email: jordan.carpenter2@usdoj.gov

**ATTORNEYS FOR**
**THE UNITED STATES OF AMERICA**

**CERTIFICATION RE: USE OF GENERATIVE AI**

Pursuant to the Standing Order for Civil Cases of Judge S. Kato Crews, I certify that any language contained within this Statement of Interest that may have been drafted by AI was personally reviewed by the filer for accuracy, and all legal citations are to actual, non-fictitious cases or cited authority.

*/s/ Jordan K. Carpenter*
JORDAN K. CARPENTER
Attorney for the United States